**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DENNIS POCOS,** | ) | **CASE NO.  1:09 CV 1050** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **LORAIN COUNTY JOINT** | ) | |
| **VOCATIONAL SCHOOL DISTRICT** | ) | |
| **BOARD OF EDUCATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Defendant,

Lorain County Joint Vocational School District Board of Education (Docket #43).   Pursuant to

Fed. R. Civ. P. 56, Defendant seeks summary judgment as to all of the claims asserted by

Plaintiff, Dennis Pocos.

**I.       Factual and Procedural Background.**

Mr. Pocos is a 66-year-old man who alleges that he was discriminated against on the

basis of his age and disabilities; that Defendant failed to accommodate his disabilities; and, that

Defendant retaliated against him.

**A.       Mr. Pocos's Employment with Defendant.**

Mr. Pocos began his employment with the Lorain County Joint Vocational School

District Board of Education at the beginning of the 1981-1982 school year as a vocational

instructor.  The District provides vocational education through high school, and adult education programs, for all residents of Lorain County, Ohio.

Until Fall 2008, Mr. Pocos was a vocational instructor in Building Maintenance. (Deposition of Dennis Pocos ("Pocos Depo.") at pp. 9-10.)  From Fall 2008 to the present, Mr. Pocos has worked as a vocational instructor in the In-School Assignment Program.  (Id. at p. 24.)

During the 2001-2002 school year, Jerry Pavlik became Mr. Pocos's direct supervisor. (Id. at p. 10; Affidavit of Jerry Pavlik at ¶ 4.)  Mr. Pocos stated during deposition that when Mr. Pavlik became his supervisor, his job changed "because Jerry Pavlik had a different idea on how the program should be run" and Mr. Pocos "didn't believe [they'd] want to try and reinvent the wheel" given his belief that the program was successful.  (Pocos Depo. at p. 11.)  Mr. Pocos also discussed the fact that he and Mr. Pavlik often disagreed.  (Pocos Depo. at pp. 16-20.)[1]

From the 2001-2002 school year until the Spring of 2008, various issues arose between Mr. Pocos and Mr. Pavlik regarding Mr. Pocos's job performance and evaluations.  (Pavlik Affidavit at ¶¶ 5-7.)  Mr. Pocos was officially reprimanded by Mr. Pavlik twice and also received poor teacher evaluations on multiple occasions.  (See Exhibits B and T attached to Defendant's Motion for Summary Judgment; Pavlik Affidavit at ¶ 7.)

In a letter dated December 20, 2006, Mr. Pocos wrote to Defendant, stating as follows:

---

[1]

The only depositions filed with the Court in this case were those of Mr. Pocos and his wife, taken by Defendant.  It does not appear that anyone was deposed on behalf of Mr. Pocos.  Mr. Pocos cites no deposition testimony in support of his claims, and did not submit an Affidavit.  The Court has thoroughly examined all of the evidence in this case in an attempt to ensure that any factual evidence tending to support Mr. Pocos's claims has been reviewed and noted.

- Mr. Pocos stated that over the course of three years, he had been "needlessly harassed and unjustifiably disciplined." Mr. Pocos stated that his 2004 evaluation would be "better characterized as a disciplinary action"; gave no suggestions for improvement; contained unsubstantiated claims; and, that the response he prepared was never entered into his file.

- Mr. Pocos stated that in the 2005-2006 school year he had received a verbal reprimand for leaving his lab door unlocked, but later discovered a written reprimand related to the incident in his personnel file, contrary to the disciplinary procedures set forth in his Contract.

- Mr. Pocos stated that after his double knee replacement in 2005, he encountered "significant difficulty in receiving permission to use [his] scooter in the building" and "received harassment from the administration regarding his use of the scooter."

- Mr. Pocos discussed efforts he made in 2006 to prepare his course of study; his request for pay related to the time he spent preparing the Course of Study; and, expressed confusion over why his pay request was denied.

Mr. Pocos also prepared a Rebuttal relative to his May 2006 Evaluation, which was received by Defendant on February 26, 2007. (Exhibit K attached to Mr. Pocos's Brief in Opposition.) The document, in its entirety, reads as follows:

I disagree with my evaluation for a number of reasons. First, it seems there was a disciplinary action taken rather than an evaluation. I feel that I am being harassed by Jerry Pavlik, because he wants to alter my course of study that was approved by the LCJVS Board. I have turned in an updated course of study using the new format that the school system requires. My advisory committee signed my course of study last year, and at that time it was suppose to have gone in front of the board for approval. This has been going on for almost two years. I have made every effort to update my course of study without any help from the administration. If Jerry Pavlik does not like my course of study, he either should give me examples or write my course of study for me. In my opinion, he should first take a few more classes in special education. Jerry, in conversation, has said he took special education classes in college while majoring in finance. I don't understand how this could have been possible. Again this year, I shared my evaluation with my peers in and out of our facility. They could not believe that a person with little teaching experience could make such statements and quote things out of context without my permission. During my post evaluation I handed my evaluation to Jerry in an envelope. He asked me if it was signed and I told him that it was. He then wanted to know if I had any further questions. The

-3-

questions I asked him, he could not come up with any answers. He evaluated me on the use of my scooter which has nothing to do with my teaching abilities. I believe he is trying to prove that I have a disability and may not be able to perform my duties. The only reason that I use my scooter is to alleviate some of the pains in my knees from my double knee surgery last Spring. I am on my feet all afternoon during lab, and using the scooter helps me to get to my classroom with ease. I feel that he is trying to get me on age discrimination. I truly believe the best thing for me at this time, is to have a change in supervisors, one who understands special education. Next year, I would like to be involved in a Special Education Academy. This way we are all on the same page with special projects. I have tried to make a change for this in the past, but Jerry seems to be in total control. I would also like to add that the Building Trades Academy, which my class belongs to now, does not involve my class in any of the construction projects. This should be the teacher's call; however, currently it is Jerry's call. Once again, Jerry is in total control. Changes need to be made for the next school year. My needs and my students' needs are not being met if Jerry continues to dictate what can and cannot be done in my program.

Despite the foregoing, Mr. Pocos asserts that his subsequent performance evaluation, completed by Mr. Pavlik on November 7, 2007, "was uniformly positive regarding planning and preparation, classroom environment, instruction and professional responsibilities." The evaluation included ratings of basic and proficient.

Mr. Pocos states that his problems with Defendant and Mr. Pavlik became worse, however, on February 12, 2008, when he made written objections regarding his 2007-2008 school-year evaluation. (Brief in Opposition at p. 11.) Mr. Pocos explained that he was not able to follow the course of study as written because of the special needs of his students; that Mr. Pavlik substituted his personal opinion for the accepted evaluation criteria; and, that he believed he should have a different supervisor. (Exhibit L to Defendant's Brief in Opposition.) At that time, Mr. Pocos related that he believed Mr. Pavlik disliked him personally and was not objectively evaluating his teaching performance.

On April 15, 2008, Mr. Pavlik visited Mr. Pocos's classroom during classtime. Mr.

-4-

Pocos was absent from the classroom.  (Pavlik Affidavit at ¶ 8.)  Mr. Pocos returned 10 minutes later with coffee, and told Mr. Pavlik that he had needed to use the restroom as a result of his medical condition.  (Pavlik Affidavit at ¶ 8.)  Mr. Pavlik told Mr. Pocos not to leave students unattended in the classroom and wrote a letter to Mr. Pocos the same day addressing the situation.  (Id. at ¶¶ 8-9; Letter from Pavlik to Mr. Pocos dated April 15, 2008.)  In the letter, Mr. Pavlik stated that Mr. Pocos was required to contact his supervisor or the principal to cover his classroom if he needed to use the restroom, and requested that Mr. Pocos provide documentation of his medical condition.  (Letter dated April 15, 2008.)

On April 16, 2008, Jill Petitti, the LCJVS Principal, sent a memorandum to Mr. Pocos requesting that he provide a doctor's note stating his medical needs and any accommodations required.  (Memorandum dated April 16, 2008.)  On April 17, 2008, Mr. Pocos provided the requested medical documentation.  (Note from Timothy Bohn, M.D.)  Prior to that time, Defendant and its employees assert that Mr. Pocos did not inform them of his medical condition, nor did Mr. Pocos request an accommodation.  (Pavlik Affidavit at ¶ 11; Affidavit of Jill Petitti at ¶ 8; Affidavit of J. Nolan at ¶ 10.)

Thereafter, Mr. Pocos contacted Ms. Petitti or Mr. Pavlik when he needed to leave the classroom to use the restroom, and Ms. Petitti, Mr. Pavlik, or another licensed teacher would cover the classroom.  (Petitti Affidavit at ¶¶ 10-14; Pavlik Affidavit at ¶¶ 12-15; Pocos Depo. at p. 53.)  There were two instances when Defendant could not accommodate Mr. Pavlik's request because no one was immediately available to go to his class.  (Petitti Affidavit at ¶¶ 15-16.)  Mr. Pocos indicated during deposition that he stopped asking for this coverage on May 28, 2008.  He testified that Ms. Petitti asked him if his requests would be an everyday occurrence, which led

him to believe Defendant would not continue to provide coverage for his restroom breaks. (Pocos Depo. at p. 58; Petitti Affidavit at ¶ 19.)  Mr. Pocos testified that he "kind of got the message that nothing is going to happen from that point on," even though he was never told that coverage would be denied.  (Pocos Depo. at p. 58.)

On April 30, 2008, the Assistant Superintendent, John Nolan, observed Mr. Pocos entering grades during class time, while his aide, Larry Pearson, instructed the class.  (Nolan Affidavit at ¶ 5.)  Mr. Nolan notified Mr. Pavlik to remind Mr. Pocos that class time was for student instruction and that grades could be entered during his planning period.  (Id. at ¶ 5.)

On May 1, 2008, Mr. Pocos, Mr. Nolan, Ms. Petitti, and Ron Gresco attended a meeting to discuss the events of April 30, 2008 when Mr. Pocos permitted his aide to teach the class.  (Id. at ¶ 6.)  Following that meeting, Mr. Nolan sent a letter to Mr. Pocos, setting forth the issues that arose with Mr. Pocos's teaching during the 2007-2008 school year, and discussing a lack of proper student instruction and supervision.  (Id. at ¶ 6; Letter dated May 1, 2008.)  Mr. Nolan wrote that Mr. Pocos's lack of attention and insubordination was unacceptable.  (Id.)

On May 2, 2008, Mr. Pocos was notified via certified mail that he would be reassigned as an instructor for the In-School Assignment Program.  Defendant asserts that Mr. Pocos was reassigned because he "was having difficulties creating an adequate Building Maintenance curriculum" and "continually resisted his superiors' suggestions, instructions and directions." Therefore, for the benefit of the Building Maintenance students and the overall efficiency and productivity of LCJVS, Mr. Pocos was transferred to In-School Assignment.

Mr. Pocos's salary and benefits were unchanged.  (Letter of Reassignment dated May 2, 2008.)  The letter he received, signed by Assistant Superintendent John Nolan, reads as follows:

This letter is to inform you that your teaching assignment for the 2008/09 school will be INSTRUCTOR OF THE IN SCHOOL ASSIGNMENT PROGRAM. Your salary and benefit package will remain per your contract.  Students identified as Special Needs will receive services either in ISA or in the tutoring room by the tutors/teachers as per their IEP's.  The students, while in ISA, will receive their regular classroom assignments prepared by their teachers.  Your responsibility will be to deliver the lesson and assist the students on a one-on-one basis.  You will have access to Study Island and OGT study packets to aide you in helping the students as needed and to prepare for testing.  It is imperative that the students are on task and held to high levels of accountability at all times. Principal Jill Petitti will be in contact with you with further details regarding the ISA position and the operation of the program in order that we might have a smooth and productive transition.

**B.     Defendant's Knowledge of Mr. Pocos's Health Issues.**

**1.     Prostate Issues and Spinal Stenosis.**

Defendant was aware that Mr. Pocos had surgery for prostate cancer in 2001, and he was given a full return to work medical note September 16, 2002.  (Medical Note from J. Stephen Jones, M.D.)  The note released Mr. Pocos to work without restrictions and was the only information provided to Defendant at that time.  Mr. Pocos did not request accommodations for his prostate condition until April 2008, when he requested restroom coverage.  Further, Mr. Pocos testified during deposition that he is not sure he made anyone in the district aware of his spinal stenosis prior to April 16, 2008, when he asked for teacher coverage during restroom breaks.  (Pocos Depo. at p. 61.)

**2.     Knee Issues.**

Mr. Pocos appears to have had knee treatment in February 2004, based on the medical note provided by Dr. Michael T. Powers, and was given a full release to return to work full-time on March 8, 2004.  (Disability Statement by Michael T. Powers, M.D.)  Mr. Pocos had a double

knee replacement in 2004 or 2005.[2]  Mr. Pocos indicated that he would have filled out a form with the School regarding leave.  (Pocos Depo. at p. 49.)  Mr. Pocos indicated during deposition that after his double knee replacement, he may have been restricted in activity for a period of time, but can't remember whether he was released to work with or without restrictions.  (Id. at p. 50.)  Mr. Pocos testified that "he may have been restricted a little bit, but not enough to make any difference on [his] everyday function, nothing to, nothing to stop [him] from everyday function." (Id. at p. 51.)

In his letter dated December 20, 2006, Mr. Pocos stated that he experienced "significant difficulty in receiving permission to use [his] scooter in the building" and "received harassment from the administration regarding his use of the scooter."  There is no evidence in the record regarding requests made by Mr. Pocos to use his scooter, or the response of Defendant or employee of Defendant to any such request.  There is no evidence in the record regarding the asserted harassment.  Mr. Pocos did use his scooter in the building.  In her Affidavit, Ms. Petitti states that Plaintiff's use of a scooter was viewed as an accommodation and deemed it to be temporary and for convenience.  (Petitti Affidavit at ¶ 8.)

On February 17, 2010, after filing the Complaint in this case, Mr. Pocos requested that handrails be installed in the restroom closest to his teaching room.  Ms. Petitti had the handrails installed on March 3, 2010.  (Id. at ¶ 20.)  Mr. Pocos was given elevator access to a handicap accessible restroom while awaiting the handrail installation.

    **C.**    **OCRC/EEOC Charge.**

---

[2]

    Mr. Pocos did not provide medical documentation and based on a review of the record it is unclear whether Mr. Pocos had one or two knee surgeries, and exactly when the surgery or surgeries occurred.

On May 7, 2008, Mr. Pocos filed an OCRC/EEOC charge of discrimination against the Board based on disability, age and retaliation.  (EEOC Charge #846-2008-37184.)  Mr. Pocos claimed that Jerry Pavlik discriminated against him on the basis of disability in the application of staff attendance procedures to him, given the fact that he needed to take frequent restroom breaks due to his prostate condition.  Mr. Pocos stated that he informed Jill Petitti that he required frequent restroom breaks due to his condition and that she requested he provide a doctor's note documenting his need for restroom breaks.  (EEOC Intake Questionnaire at pp. 2-3.)  Mr. Pocos indicated his disabilities as "pulling, limited walking [and] climbing."  (Id.)  Plaintiff did not include frequent and urgent urination in the questionnaire or the charge.  (Id.)

On February 5, 2009, the EEOC sent a notice to Mr. Pocos that it was unable to conclude that the information provided by Mr. Pocos established violations of the applicable statutes and closed its file on Mr. Pocos's charge.  (EEOC Dismissal and Notice of Rights dated February 5, 2009.)  On May 6, 2009, Mr. Pocos filed his Complaint in this Court.

### D.        Subsequent Discipline.

Between February 5, 2009 and May 6, 2009, the Board suspended Mr. Pocos without pay for abandoning his teaching duties on two separate occasions.  (Letter of Suspension dated November 6, 2008.)  The first incident occurred on September 26, 2008 when Mr. Pocos was scheduled to have a meeting with administrators concerning inappropriate images found on his school computer.  (Id.)  Plaintiff left the meeting, and the school, because he was not permitted to audiotape the meeting.  He had not arranged for someone to cover his remaining class period. (Id.)  The second incident occurred on October 29, 2008.  Mr. Pocos felt his classroom was too hot and was wearing only his undershirt.  Mr. Pocos became upset when he was told to put his

-9-

shirt back on; left the premises; and, told Ms. Petitti he needed a substitute.  (Id.)  The suspension is the subject of a pending arbitration between Mr. Pocos and the Board.

      **E.**      **The Complaint.**

Mr. Pocos filed his Complaint in this Court on May 6, 2009.  In the Complaint, Mr. Pocos states that he is disabled due to a total double knee replacement; spinal stenosis; and, difficulty urinating due to his prostate cancer surgery.  Mr. Pocos states in his Complaint that he is medically limited in walking; lifting over 50 pounds; and, sitting and standing for over an hour at a time.  Mr. Pocos states that he needed immediate, periodic access to a handicap accessible restroom for frequent restroom breaks, but that when the need for an accommodation became apparent it was denied by the Board.  Mr. Pocos states in his Complaint that the disabilities existed for approximately 6 years prior to the filing of his Complaint and that he notified the Board and its agents and employees of the disabilities and requested accommodations on numerous occasions.

Mr. Pocos asserts that he was reassigned in retaliation for requesting an accommodation and in an effort to force him to retire because of his age and disabilities.   Mr. Pocos asserts that the Board discriminated and retaliated against him by placing him in a physically limiting work environment – a desk assignment – exacerbating his medical conditions and prohibiting him from having the opportunity for restroom breaks.  Mr. Pocos asserts that the poorly ventilated room, with limited opportunity for movement, worsened his medical condition.  Mr. Pocos states that his current work assignment is in the basement of the School, making it impossible to get to handicap accessible restrooms and making it impossible to participate in fire drills because he cannot climb stairs.

-10-

Mr. Pocos claims that Defendant was on notice of his disabilities and conditions because he needed frequent and rapid access to handicap restroom facilities.

Defendant filed its Motion for Summary Judgment on April 30, 2010.  (Docket #43.)  Mr. Pocos filed his Brief in Opposition on May 24, 2010.  (Docket #45.)  Defendant filed its Reply Brief on June 4, 2010.  (Docket #47.)

## II.     Summary Judgment Standard.

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.  The court will view the summary judgment motion in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "[t]he mere existence of

a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252).  Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify.  Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit.  Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248.  The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249.  The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

-13-

III.     **Discussion.**

The Court has thoroughly and exhaustively reviewed all of the claims raised by Mr. Pocos in this action; Defendant's Motion for Summary Judgment; and, all supporting documentation, including a detailed analysis of the deposition testimony and evidentiary materials submitted by both Parties.  The Court has thoroughly restated the facts in this case.  Reviewing Defendant's summary judgment motion in the light most favorable to Mr. Pocos, there are no genuine disputes as to any material facts in this case and Defendant is entitled to summary judgment as to all of the claims raised in the Complaint.

In his Brief in Opposition, Mr. Pocos does little more than restate the allegations raised in the Complaint, and based upon these allegations argues that summary judgment is inappropriate. Although he attaches 17 Exhibits to his Brief in Opposition, Mr. Pocos cites nothing in the record to substantiate his claims that he was discriminated against and retaliated against on the basis of age and disability, or that defendant failed to accommodate his asserted disabilities.  The only depositions taken in this case were those of Mr. Pocos and his wife, and it appears that no depositions were conducted on behalf of Mr. Pocos.  Mr. Pocos did not submit an Affidavit.  The mere assertion that there is a genuine issue of material fact necessitating trial, standing alone, is insufficient.

At most, Mr. Pocos presented evidence that he and Mr. Pavlik, his supervisor, did not work well together and that his relationship with those above him in the chain of command at LCJVSD had become difficult.  However, there is no evidence that these conflicts were in any way the result of a discriminatory animus.  Mr. Pocos has the burden of producing evidence that a genuine issue of material fact exists which necessitates resolution by a jury.  Mr. Pocos has failed

-14-

to do so, entitling Defendant to summary judgment as a matter of law.

The Court will briefly address the legal merits of each of the claims raised by Mr. Pocos.

**A.      Discrimination Based On Age - ADEA.**

The ADEA prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1).  An ADEA plaintiff must prove, by a preponderance of the evidence, either direct or circumstantial, that age was the but-for cause of the challenged employer decision. *Gross v. FBL Fin. Services, Inc.,* 129 S. Ct. 2343, 2351 n.4, 174 L. Ed. 2d 119 (2009).

There is no direct evidence of age discrimination in this case.  A plaintiff sets forth a prima facie case of age discrimination through circumstantial evidence by establishing: 1) that he was a member of a protected class; 2) that he suffered an adverse employment action; 3) that he was qualified for the position held; and, 4) that he was replaced by someone outside of the protected class or that he was treated differently than similarly situated employees outside the protected class.  *Geiger v. Tower Auto.,* 579 F.3d 614, 622 (6th Cir. Mich. 2009); *Martin v. Toledo Cardiology Consultants, Inc.,* 548 F.3d 405, 410 (6th Cir. 2008).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a non-discriminatory reason for the discharge.  If the employer provides such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was a pretext for age discrimination.

Even if Mr. Pocos were able to establish a prima facie case, there is nothing in the record to establish that the true reason for his transfer to the In-School Assignment program was because of his age.  Defendant asserts that it had a legitimate, non-discriminatory reason for moving Mr.

-15-

Pocos to the In-School Assignment Program, "the Board's legitimate, nondiscriminatory strategy to improve the quality of education for its Building Maintenance students and enhance efficiency."  (Nolan Affidavit at ¶ 8; Collective Bargaining Agreement, Article V: Board Rights Clause.)  Defendant cites the Board Rights Clause, Article V of the Collective Bargaining Agreement, which provides that the decision to reassign an instructor lies solely at the discretion of the Board.  Defendant states that it determined Mr. Pocos could neither service the needs of his students, nor follow proper Building Maintenance curriculum, and made the decision to move Mr. Pocos elsewhere "so that the Building Maintenance Program would have the opportunity to reach its potential."  The evidence substantiates the reasons given by the Board.

"An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee."  *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).  "In order to prove pretext, therefore, the plaintiff must introduce admissible evidence to show that the proffered reason was not the true reason for the employment decision and that discriminatory animus was the true motivation driving the employer's determination."  *Grace v. USCAR*, 521 F.3d 655, 677-78 (6th Cir. 2008).  "An employer may make employment decisions 'for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason.'"  *Brown v. Renter's Choice, Inc.*, 55 F. Supp. 2d 788, 795 (N.D. Ohio 1999) (quoting *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1187 (11th Cir. 1984)).

While Mr. Pocos may have felt that the In-School Assignment program was a less desirable assignment, there is nothing which links the transfer to a discriminatory motive.  The evidence presented, viewed in its totality, fails to rebut the legitimate, non-discriminatory reason

-16-

proffered by Defendants for transferring Mr. Pocos.  During deposition, Mr. Pocos testified that the sole basis for his age discrimination claim was his belief that Defendant could have hired two replacements for him "for the price of one."  (Pocos Depo. at p. 85.)[3]  "Mere personal beliefs, conjecture and speculation are insufficient to support an inference of . . . discrimination." *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997).  There is no evidence whatsoever that Defendant was motivated to reassign Mr. Pocos for this reason, or for any other reason related to his age.

Likewise, relative to his suspension in November 6, 2008, admittedly an adverse employment action, there is no evidence that the suspension was the result of his age. Accordingly, to the extent that Mr. Pocos asserts that his suspension was the result of an age discriminatory animus, his claim also fails as a matter of law.

**B.      Discrimination Based On Disability – ADA.**

The ADA prohibits discrimination "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions or privileges of employment."  42 U.S.C. § 12112(a).

In order to establish disability discrimination under the ADA, a plaintiff must show the following five elements:

> (1) he or she is disabled, (2) is otherwise qualified for the job, with or without reasonable accommodation, (3) suffered an adverse employment decision, (4) the employer knew or had reason to know of his or her disability, and (5) after rejection or termination the position remained open, or the disabled individual was replaced.

*Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996) (interior quotes and

---

[3]Mr. Pocos's salary and benefit package remained the same after his transfer.

-17-

citations omitted).  If the plaintiff presents evidence of a prima facie case, then the defendant may produce evidence of a legitimate non-discriminatory reason for its actions.  The plaintiff must then introduce evidence to show that the defendant's reason was a mere pretext for illegal discrimination.  At all times, the plaintiff bears the ultimate burden of persuasion. *See Monette*, 90 F.3d at 1186.

To qualify as disabled, "an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." *Mahon v. Cromwell*, 295 F.3d 585, 589 (6th Cir. 2002).

Assuming the facts in the light most favorable to him, Mr. Pocos has failed to carry his burden.  Like his ADEA claim, there is nothing in the record to substantiate Mr. Pocos's claim that his transfer and/or suspension were the result of a discriminatory animus.  To the extent that the Parties disagree as to whether Mr. Pocos was in fact disabled, or whether Defendant knew of the alleged disability, any dispute is immaterial.   There is nothing in the record to link his transfer to his asserted disabilities.   While Mr. Pocos may have believed the job assignment to be less desirable, his belief standing alone, is insufficient to establish that the true reason for his reassignment and/or suspension was the result of a discriminatory animus based on his disability. Accordingly, Defendant is entitled to summary judgment as a matter of law.

C.       **Discrimination-Failure to Accommodate**.

The ADA defines discrimination to include, among other things, "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A).  The plaintiff has the burden of establishing he is disabled as defined in the ADA. *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 869 (6th Cir. 2007). The plaintiff also "bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable." *Id.* at 870.  The burden of proof then shifts to the defendant to show that the accommodation would be an undue hardship. *Talley v. Family Dollar Stores of Ohio, Inc.,* 542 F.3d 1099, 1108 (6th Cir. 2008).

In order for an accommodation to be reasonable, it should be necessary in light of the plaintiff's known physical limitations. *Nance v. Goodyear Tire & Rubber Co.,* 527 F.3d 539, 557 (6th Cir. 2008); *see also Jackson v. City of Chicago,* 414 F.3d 806, 813 (7th Cir. 2005). A reasonable accommodation includes "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices . . . [or] other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9).  The ADA does not require the employer to create a new position for the plaintiff as an accommodation. *Kleiber,* 485 F.3d at 869.

Mr. Pocos presented no evidence that Defendant failed to accommodate his asserted disabilities.  Mr. Pocos claims that his prostate and urinary tract issues, which caused the need for frequent restroom breaks, were known to Defendant but ignored.  To the contrary, the evidence demonstrates that Defendant first learned of Mr. Pocos's need for frequent restroom breaks in April 2008, when Mr. Pavlik discovered he was absent from the classroom during class time. Prior to that time, Defendant was unaware of the need for an accommodation.  Mr. Pocos was

-19-

then asked to notify his superiors in the event he needed to use the restroom, so that they could provide coverage for his class.  When Mr. Pocos indicated that he would need to leave class to use the restroom frequently, Defendant asked that Mr. Pocos provide medical documentation, and he did so immediately.  The breaks were permitted with the only condition being that he call someone to cover his class.  While Mr. Pocos states that he stopped requesting the assistance because he believed that his requests would not be honored, he offers nothing more than his unsubstantiated belief that this was the case.  There is no evidence of record that Defendant denied or planned to deny Mr. Pocos coverage of his class during restroom breaks.  Isolated incidents where coverage for his class was not available do not amount to a denial of the accommodation.

Further, on February 17, 2010, after filing his Complaint in this case, Mr. Pocos requested handrails be installed in the men's room near his classroom, and the handrails were installed on March 3, 2010.  Mr. Pocos was given elevator access so that he could reach a handicap accessible restroom while awaiting the installation.

In addition to the foregoing, Mr. Pocos claims that "he experienced significant difficulty from the administration in obtaining permission to use" a scooter to navigate the school building.  Mr. Pocos included this statement in his 2006 letter to Defendant.  However, Mr. Pocos has presented no evidence to substantiate this assertion.  Mr. Pocos provides no information regarding when or how he requested the use of his scooter as an accommodation; to whom he directed his requests; and, has presented no evidence regarding the response to his requests or whether those requests were denied.  Mr. Pocos presented no evidence as to how he was harassed regarding the use or requested use of his scooter.  The only evidence before the Court, aside from Mr. Pocos's statement, establishes that Mr. Pocos did in fact use his scooter to navigate the

-20-

building and that Defendant believed it to be an accommodation that Mr. Pocos would use on a temporary basis.

Finally, Mr. Pocos claims that the In-School Assignment position was "a desk assignment, which prohibited his physical movement and prohibited the needed opportunity for restroom breaks"; was a position located in the "basement" which made it "impossible to get to restrooms that are handicap accessible"; and, that "in case of frequent fire drills, . . . [he would be] unable to climb stairs due to his medical disability."  Mr. Pocos claims the transfer exacerbated his condition.  Mr. Pocos presented no evidence to substantiate these claims.  More important, Mr. Pocos presented no evidence that he proposed an additional accommodation but was denied.  Accordingly, Mr. Pocos's failure to accommodate claim fails as a matter of law.

> **D.**     **Retaliation.**

A prima facie case of retaliation requires a plaintiff to demonstrate that (1) he engaged in activity protected by the ADA or ADEA; (2) the defendant knew of the exercise of his protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and, (4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516 (6th Cir. 2009).   In order to establish causation, "a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not" engaged in protected activity. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

Once the plaintiff establishes a prima facie case, the burden shifts to the defendant "to produce evidence of a legitimate, nondiscriminatory reason for its actions." *Niswander v. Cincinnati Ins. Co.,* 529 F.3d 714, 720 (6th Cir. 2008). The plaintiff must then demonstrate that

-21-

the legitimate reason is pretextual. *Id.*

Mr. Pocos claims he was moved to In-School Assignment almost immediately after Defendant learned of his need for frequent use of a handicap accessible restroom, in retaliation for requesting an accommodation.  However, he presents no additional evidence from which one could infer that the transfer was caused by his request.  Temporal proximity is insufficient in and of itself to establish causation. *See Nguyen v. City of Cleveland,* 229 F.3d 559, 567 (6th Cir. 2000) (refusing to find that temporal proximity was sufficient in itself to establish a causal connection, and declining to decide "how much evidence in addition to temporal proximity would be required"); *McNett v. Harden Comm. Fed. Credit Union,* 118 F. App'x 960, 965 (6th Cir. 2004) (unpublished) ("[T]he employer's knowledge of the protected activity coupled with an adverse action occurring close in time can create an inference of causation *where the particular circumstances strengthen the inference of causation."*) (emphasis added) (citing *Nguyen*, 229 F.3d at 566).

As set forth above, Defendant has presented a legitimate, non-discriminatory reason for moving Mr. Pocos to the In-School Assignment position.  There is no evidence that his request for frequent use of a handicap accessible bathroom was the cause for his transfer.  Further, the evidence demonstrates that Defendant modified a nearby restroom, after Mr. Pocos's transfer, at his request to make it handicap accessible, and provided him with elevator access to a suitable restroom in the meantime.  No other accommodations were requested or denied.  Accordingly, there is no basis upon which to sustain his retaliation claim.

In addition to the foregoing, in his EEOC complaint, Mr. Pocos stated that he was retaliated against for exercising his rights under the ADA and ADEA.  The Court cannot find, based on a careful review of all of the evidence submitted in this case, any support for the assertion that Mr. Pocos was retaliated against by Defendants for exercising his rights under either provision.

Based on the foregoing, Defendant is entitled to summary judgment on Mr. Pocos's retaliation claim as a matter of law.

**IV.    Conclusion.**

The Motion for Summary Judgment Filed by Defendant, Lorain County Joint Vocational School District Board of Education (Docket #43) is hereby GRANTED.  This case is hereby TERMINATED.  All other pending motions are terminated.

IT IS SO ORDERED.

                  s/Donald C. Nugent
                 DONALD C. NUGENT
                 United States District Judge

DATED:  June 23, 2010